Argued March 21; affirmed April 18, 1944

VINTON *v.* HOSKINS ET AL.

(147 P. (2d) 892)

Before BAILEY, Chief Justice, and ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*Earl A. Nott,* District Attorney, of McMinnville, and Elliott Cummins, Assistant Attorney General, for appellants.

*Eugene E. Marsh,* of McMinnville (Vinton, Marsh & Marsh, of McMinnville, on the brief), for respondent.

HAY, J.

The plaintiff, Mr. W. T. Vinton, a resident and taxpayer of Yamhill County, Oregon, instituted these proceedings by filing in the circuit court for Yamhill County a petition praying for the issuance of a writ of mandamus, commanding the defendants, who constitute respectively the county court and county clerk of Yamhill County, to comply with the state law with respect to publication of the county budget estimates for the fiscal year, July 1, 1943, to June 30, 1944. The petition alleged, *inter alia,* that said county court had nominated and selected a budget committee as required by law, for the purpose of preparing and adopting a budget for Yamhill County for said fiscal year, and that, on May 28, 1943, such budget committee prepared and adopted such budget estimates, fixed a time and place at which persons subject to the proposed tax levy might be heard in favor of or against the same,

and thereafter published a notice of such hearing; that the notice, as published, did not give to the taxpayers of the county a full and complete disclosure of the contemplated expenditures or of the money proposed to be raised by taxation for the fiscal year in question, in that it did not include fully itemized budget estimates; and that, although demand was made upon defendants to publish budget estimates fully itemized as required by law, they refused to do so. A copy of the notice, as published, was attached to the petition. An alternative writ, embodying the allegations of the petition, issued in due course.

The defendants demurred to the alternative writ upon the grounds, (1) that it did not state facts sufficient to entitle the petitioner to the relief demanded, and (2) that the petitioner did not have legal capacity to institute the proceedings. Thereafter, the circuit court made an order permitting the petitioner to amend his petition, by alleging that the district attorney for Yamhill County had refused to join in the proceedings and to bring the same in the name of the State of Oregon upon the relation of the petitioner, and that, therefore, the petitioner had brought the proceedings in his own name, for the benefit of all citizens and taxpayers of Yamhill County. The alternative writ was thereupon amended to conform to the amended petition, and the defendants' demurrer was allowed to stand as against the amended writ. The demurrer to the writ was overruled, and a peremptory writ of mandamus thereupon was issued, commanding the defendants forthwith to publish, as required by law, budget estimates, fully itemized, for Yamhill County, Oregon, for the fiscal year, July 1, 1943, to June 30, 1944. The defendants have appealed to this court.

■ It is the rule that, unless authorized by statute, an individual taxpayer may not bring suit against the administrative authority of a county, in relation to its fiscal affairs, unless he has some special interest which is entitled to protection, as distinguished from the interests of the general public. 20 C.J.S., Counties, section 288. Our statute, however (section 11-302, O. C. L. A.) provides that mandamus "may be issued to any inferior court, corporation, board, officer, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station". If, therefore, the law specially enjoins upon county courts the duty of publishing fully itemized budget estimates, in connection with the calling of a meeting of the taxpayers for the purpose of discussing a proposed tax levy, then it would appear that such county court may properly be subjected to mandamus to compel the performance of such act. Ordinarily, it is clear that in such cases the writ should be issued at the instance of the proper law officer of the state—in this case, the district attorney for Yamhill County or the attorney-general. *Putnam v. Norblad,* 134 Or. 433, 293 P. 940. It appears, however, from the petition and from the allegations of the alternative writ, that the district attorney refused to institute the proceedings. In fact, he appeared on behalf of the defendants in opposition thereto. The attorney-general has appeared, with the district attorney, for the defendants-appellants in this court. Under such circumstances, we think that it was competent for the petitioner to institute the proceedings in his own name, for the benefit of all taxpayers of the county, and that the demurrer upon this ground was properly overruled. *McKenna v. McHaley,* 62 Or. 1,

123 P. 1069; *Gosso v. Riddell,* 123 Or. 57, 261 P. 77; *Gosso v. Hart,* 123 Or. 67, 261 P. 80; *Young v. Gard,* 129 Or. 534, 277 P. 1005; Anno., 124 A.L.R. 585; 20 C.J.S., Counties, section 287.

The making and publication of estimates of the amount of moneys to be raised by taxation by counties were requirements of the law of Oregon as early as the year 1913. The original act (chapter 234, L. 1913) provided that the estimates should be fully itemized, the required details of itemization being specifically set forth. These estimates, together with a notice of the time and place at which taxpayers might discuss them with the county court, were required to be published in the official county newspaper.

In 1921 (chapter 118, L. 1921), the 1913 act was repealed, and a new statute, known as the local budget law, was enacted. This statute was made applicable to all municipal corporations, including counties. It required the preparation, in advance, of fully itemized estimates of the amount of money proposed to be expended by any municipal corporation during the fiscal year next ensuing. Section 4 of the act (section 110-1204, O. C. L. A.) sets forth the manner in which the estimates are required to be itemized, and is as follows:

> "The estimates herein required shall be fully itemized and shall be so prepared and arranged as to show in plain and succinct language each particular item of proposed expenditure, showing under separate heads the amount required for personal service, for material and supplies and for any and all other purposes for each department, each office or officer, each improvement or unit thereof, the construction, maintenance and repair of each building, structure or institution and the salary of

each officer or employe; provided, that employes of like salary in amount in each department or office may be listed by the number of such employes, the amount of each salary and the amount of their combined salaries. Said estimates shall show also the amount proposed to be expended for the construction, use, maintenance or improvement of public highways, roads, streets, bridges; the construction, operation and maintenance of each public utility; the payment of bonded, floating, funded, warrant or other indebtedness and the interest thereon, and shall contain a full and complete disclosure of all the proposed expenditures. Accompanying said estimates and made a part thereof shall be the original estimate sheets of every officer and department from which the estimates herein required have been compiled. Said original estimate sheets shall show in parallel columns the unit costs of the several services, material and supplies for the three fiscal years next preceding the current year, the detailed expenditures for the last one of said three preceding fiscal years and the budget allowances and expenditures for six months of the current year. Said estimates of proposed expenditures and original estimate sheets as provided in this section shall, when prepared, be certified to as correct and filed in the office of the levying board and shall be open to public inspection. All estimates of expenditures and all other estimates of any kind required by this act shall be made a sufficient length of time in advance of all regular or special meetings of the levying board at which by law tax levies are authorized to be made to permit publication thereof, discussion thereof, and consideration thereof and action thereon as hereinafter provided.''

By section 7 (section 110-1207, O. C.L. A.), provision was made for publication of the estimates. That section was amended in 1925 (chapter 28, L. 1925), and again in 1941 (chapter 356, L. 1941), but such amend-

ments effected no change so far as publication of the complete estimates was concerned. In 1943, however, (chapter 393, L. 1943) section 7 was further amended, so as to read as follows:

"The classified summary of the estimates required by this act and a summary of the estimates for the current year and the expenditures for each of the two fiscal periods next preceding the current year, and a full and complete classified summary of the indebtedness of said municipal corporation specifying the general nature of said indebtedness, such as bonds, warrants, etc., together with a notice of the time and place at which said estimates may be discussed with the levying board, shall be published in the manner provided in this act at least twice prior to the time appointed for such proposed meeting in a newspaper of general circulation published in the municipal corporation; provided, that the first publication shall be not less than 20 days nor the second publication less than 10 days prior to the date of such meeting; provided further, that in case no newspaper of general circulation shall be published in the municipal corporation, then the notices and estimates required by this act shall be posted in three conspicuous places in the municipal corporation for at least 20 days prior to such meeting; provided, however, t h a t municipal corporations having a population exceeding 100,000 inhabitants shall, in lieu of the publication and notice prescribed in this section, submit its budget to the tax supervising and conservation commission within its county, if there be such a commission, at least 20 days prior to the legal date of public hearing before said tax supervising and conservation commission on said budget, and such budget shall thereupon be open to inspection by any taxpayer or citizen."

It is not contended that, in preparing its budget estimates for the fiscal year in question, the county

court of Yamhill County did not, in all respects, observe the requirements of the local budget law. The only question before us is whether or not the estimates were published in the manner required by law. It is admitted that the fully itemized estimates were not published. What was published was a summary thereof, classified according to organizational or operative units, but not broken down so "as to show in plain and succinct language each particular item of proposed expenditure."

It was the evident purpose of the act of 1921 to require municipal corporations not only to make itemized estimates of the income which they proposed to expend during the next succeeding fiscal year, but to publish such estimates as well, so that the taxpayers might be fully advised, and might have an opportunity of meeting with the levying board and discussing the budget with it. Another purpose, equally important, was to require such corporations to live within their budgeted income. *Dougan Company v. Klamath County*, 99 Or. 436, 193 P. 645; *Glines v. Bain*, 157 Or. 358, 72 P. (2d) 33.

In the amendment of 1943, the legislature made a very definite change in the phraseology of that section of the local budget law which provides for publication of the estimates. Theretofore the law, as it was originally enacted in 1921, and through its various amendments to and including the amendment of 1941, made specific provision for the publication of the estimates themselves, and not of any summary thereof. Even the act of 1913 required publication of the estimates themselves. The appellants take the position that, in construing the amendment of 1943, the court should ascertain what was the primary intention of

the legislature in adopting the amendment, and, invoking the rule that all of the language of the amendment should be considered, and such interpretation placed upon any word or phrase appearing therein as was within the manifest intent of the legislature, they argue that it is clear that the legislature intended to obviate the necessity for publishing the complete estimates, and to require only the publication of a classified summary thereof.

The particular part of the amendment which we are now considering is as follows:

"The classified summary of the estimates required by this act * * * shall be published in the manner provided in this act * * * ."

The learned circuit judge was of the opinion that the definite article "the", in the phrase "the classified summary of the estimates required by this act", refers as an antecedent to the fully-itemized estimates which are required to be prepared by sections 3 and 4 of the act of 1921 (sections 110-1203 and 110-1204, O. C. L. A.) He thought that the purpose of the required publication was to inform the taxpayers of the details, as well as of the aggregate, of the proposed expenditures, and of their relation to past expenditures. He felt that the amendment was not intended to relieve a municipal corporation of the duty of publishing the complete estimates of proposed expenditures.

It must be admitted that the language used in the amendment under consideration was rather unfortunately chosen. The reference to *"the* classified summary of the estimates required by this act" was ambiguous, because, save in that phrase itself, no classified summary of the estimates is mentioned anywhere in the act. It might be competent for the court, upon

recognized principles of statutory construction, to construe the ambiguous phrase in question as authorizing the publication of a classified summary of the estimates in lieu of the complete estimates, by eliminating the definite article "the" and substituting the indefinite article "a", thus making the phrase read: "A classified summary of the estimates required by this act * * * shall be published * * * ." 25 R.C.L., Statutes, section 225, pp. 975, 976; Id., section 227; Sutherland, Stat. Const., 3 ed., section 4925. As we shall show, however, our difficulty would still be unsolved.

The title of the original act of 1913 (chapter 234) is as follows:

"To require estimates of amounts to be raised by taxation by any county to be made and published in advance of levy, and to provide for public meetings and discussions by the taxpayers of proposed levies; to prevent levy of taxes in certain cases greater than the estimates, or greater expenditures of public moneys than such estimates and 10 per cent thereof, and for other purposes."

The act of 1921 (chapter 118) was not an amendment of the 1913 act, but was original legislation. The legislative purpose to require publication of the complete estimates, as expressed in the act of 1913, however, is carried forward into the act of 1921, as expressed in the title, which is as follows:

"To require all municipal corporations as defined in this act to prepare and file estimates of proposed expenditures and probable receipts from all sources of revenue before making a tax levy; to prescribe the manner of preparing such estimates; to provide for the publication of such estimates and for a public hearing upon them; to provide the manner in which levying boards shall make levies of taxes; and to repeal sections 4397, 4398, 4399, 4400,

4401 and 4402 of Oregon Laws, and all acts or parts of acts in conflict herewith."

Such purpose is evident in the body of the act also. This court has had occasion to comment upon the purpose of the act of 1913, as follows:

"* * * The obvious purpose of the law is to have an estimate of county expenditures made and published, together with the total amount of taxes levied by any road or school district, city, port or other tax levying authority within the jurisdiction of the county in order that the taxpayers may be informed approximately the amount proposed to be levied against their property and the purposes for which it is to be expended, in order that those upon whom the tax burden rests may oppose or favor any such levy in a discussion with their officers * * *."

*State v. Hare*, 78 Or. 540, 153 P. 790.

■ Assuming, but not deciding, that the portion of the amendment which provides for publication of a classified summary of the estimates, in lieu of publication thereof in full, was germane to the subject of the original act, as shown by its title, and hence not violative of section 20 of Article IV of the state constitution, we are of the opinion that the term "classified summary" is too vague to convey a definite meaning capable of serving as a standard or guide in carrying that portion of the amendment into effect. The determination of what summary will comply with the purposes of the law is left to the unguided judgment of each municipal corporation. Reference to section 4, which provides the manner in which the estimates are to be compiled, is of no assistance in determining what constitute the "classes" of which a summary is to be given. Even the title of the amendment is misleading:

"To amend section 110-1207, O. C. L. A.; as amended by chapter 356, Oregon Laws, 1941, re-

lating to the preparation of local budgets; and declaring an emergency.''

While it purports to be that of an amendment to section 110-1207, O. C. L. A., as amended, ''relating to the preparation of local budgets'', the fact is that section 110-1207 does not relate to the preparation of local budgets at all, but to the publication thereof. This may have misled the members of the legislature as to the scope of the amendment, particularly in view of the fact that the major reason for its adoption may have been to coordinate the local budget law with chapter 440, section 30, L. 1941, which in effect changed the fiscal year for the state and for municipal corporations. The incidental alteration in the wording of that portion of the section regarding publication no doubt was intended to express a legislative intention to obviate the necessity for publication of the estimates in full. Because of its vagueness, however, we hold that it is inoperative, and, in that respect, the law stands as it was before the amendment. 59 C. J., Statutes, sections 160, 161; 25 R. C. L., Statutes, section 62; *Leffingwell v. Lane County,* 64 Or. 144, 129 P. 538; *Commonwealth v. Bank of Pennsylvania,* 3 Watts & S., (Pa.) 173; *State v. Partlow,* 91 N. C. 550, 49 Am. Rep. 652; *Midwest Hotel Co. v. State Board of Equalization,* 39 Wyo. 461, 273, P. 696; *State ex rel. v. Gaitskill,* 133 Kan. 389, 300 P. 326; *State v. Jay J. Garfield Bldg. Co.,* 39 Ariz. 45, 3 P. (2d) 983; *In re Maury,* 97 Mont. 316, 34 P. (2d) 380; *Green v. State Highway Board,* 172 Ga. 618, 158 S. E. 329; *Charleston National Bank v. Fox,* 116 W. Va. 487, 182 S. E. 91; *Christy-Dolph v. Gragg,* 59 F. (2d) 766.

The judgment of the circuit court is affirmed, with costs.