Butcher, Appellant, *v.* Philadelphia Civil
Service Commission et al.

Argued March 19, 1948. Before RHODES, P. J., HIRT,
RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Richardson Blair* and *Philip Price,* with them *William Barclay Lex,* for appellant.

*James Francis Ryan,* Assistant City Solicitor, with him *Frank F. Truscott,* City Solicitor, for appellees.

OPINION BY ARNOLD, J., September 29, 1948:

This is a mandamus action brought by an individual against the three members of the Civil Service Commission of the City of Philadelphia, which conducts examinations, inter alia, for hosemen for the Bureau of Fire, under the provisions of what is known as the "City Charter". (Act of June 25, 1919, P. L. 581. See 53 PS §3321 et seq.) Article XIX, §14 of that Act (53 PS §3334) provides in part: "All minutes, examination papers, . . . and other records of the commission, . . . shall be preserved, and shall, subject to reasonable regulations as to the time of examination, be open to public inspection. . . ."

The petitioner was a citizen-taxpayer of Philadelphia and on October 8, 1946, was refused permission to inspect, during ordinary business hours, the questions used by the respondents as a part of the examination for hosemen in *1944.* He averred that "the concealment of the 1944 examination questions will permit the re-use of some or all of [them] . . . [in the] . . . Examination . . . for November 1946, and thus give unfair advantage to . . . the 1944 examinees . . . who are candidates in 1946." The respondents' return admitted the refusal and as justification pleaded that the 1944 examinations were taken by about one thousand applicants; that the mental test was a series of "true" or "false" and "multiple choice" type questions, as to which the applicant indicated his answers on a separate scoring sheet; that all questions were required to be returned with the scoring sheets, and that "Many of these questions are of a nature which require the use of similar questions in subsequent examinations. . . ." The return averred that the policy

of the commission was to withhold questions of this type from public information, and that instead twenty sample questions were given any applicant who requested such information. The respondents also pleaded that a new examination was scheduled for the immediate future (November, 1946) and that the inspection of the 1944 questions (at least some of which would be repeated in November, 1946) would give an improper advantage to the 1946 examinees, and that petitioner did not aver that he had "any special or personal interest in the papers [sought to be examined] . . . or that he has suffered any special injury separate and apart from the rest of the public. . . ."

Petitioner demurred to the return, on which judgment was entered for the respondents. The court below did not hold that the petitioner had no right to inspect the papers, but though such right existed, petitioner could not maintain a mandamus brought in his own name; and that such action would have to be brought in the name of the Commonwealth on the relation of the attorney general or district attorney. The petitioner appealed.

We agree with the appellant that where, by statute, records are open to public inspection, such right need be sustained by no particular reason and may be exercised out of idle curiosity. See 45 Am. Jur., Records, §18,[1] and 53 C. J., Records, §44.[2] But the question here is

---

[1] "Statutes frequently provide that public records are, at all times during reasonable hours, open to inspection by any citizen. . . . It is not essential that the interest of a person desiring to inspect public documents be private and capable of sustaining a suit or defense on his own personal behalf. That common interest which every citizen has in the enforcement of the laws and ordinances of the community wherein he dwells has been held to entitle a citizen to the right to inspect the public records in order to ascertain whether the provisions of the law have been observed."

[2] "Under a statutory provision that all citizens and all other persons interested in public records may examine the same, a resident of a county and of the state may examine public records."

whether such right can be vindicated by a mandamus action brought by an individual, in distinction to an action brought by the Commonwealth.

Under the common law of England, mandamus would not lie at the instance of an individual to enforce a purely public right, in the absence of special and peculiar injury to himself. Such writ could issue only on the relation of the attorney general. In other jurisdictions where individual petitioners have been successful in mandamus to enforce a statutory right of inspection without special injury to the plaintiff, the result has seemingly depended either upon the terms of the statute creating the right or the terms of the statute governing mandamus proceedings; and in those cases the statutes have been different from the Pennsylvania acts. In cases involving the plaintiff's interest in the expenditure of tax monies a distinction has been made: *State of Tennessee ex rel. Walker Wellford v. J. J. Williams, Mayor* of Memphis (Tenn.), 75 S. W. 948, annotated in 64 L. R. A. 418. In the instant case no question of municipal finances is involved.

The "City Charter" provisions above quoted did not pronounce any adjective law, and in Pennsylvania mandamus actions are governed solely by the Act of 1893, P. L. 345, as amended (12 PS §1911 et seq.), and as the same has been modified by Pa. R. C. P. 1091 through 1098.

Under §3 of the Act of 1893 (12 PS §1913), the writ can issue on behalf of "any person beneficially interested." Under §4 (12 PS §1914): "When the writ is sought to procure the *enforcement of a public duty*, the proceeding shall be prosecuted in the name of the Commonwealth on the relation of the Attorney General: Provided however, That said proceeding in proper cases shall be on the relation of the district attorney of the proper county. . . ." (Italics supplied.) Thus the action of mandamus in Pennsylvania is an extraordinary remedy, regulated by statute as to parties and procedure.

The distinction between the words, "any person beneficially interested" (§3 of the Mandamus Act), and the words, "the enforcement of a public duty" (§4 of the Mandamus Act), has not always been observed, but nevertheless clearly exists.[3] One of the careful statements is in *Loraine v. Pittsburg, Johnstown, Ebensburg & Eastern Railroad Company*, 205 Pa. 132, 54 A. 580, in which Justice DEAN stated (page 135): "The test of right of a private relator to the writ is *not* [merely] . . . *whether the duty sought to be performed be a public one, but whether the complainant by breach of the public duty has suffered an injury special and peculiar to himself.*" (Italics supplied.) See also *Davidson v. Beaver Falls Council*, 348 Pa. 207, 208, 34 A. 2d 505, and the cases cited therein. This question is also treated in *Ed A. Nowack v. Oramel B. Fuller, Auditor General* (Mich.), 219 N. W. 749, annotated in 60 A. L. R. 1356; *State of Tennessee ex rel. Walker Wellford v. J. J. Williams, Mayor of Memphis* (Tenn.), 75 S. W. 948, annotated in 64 L. R. A. 418; *John J. Egan v. Board of Water Supply of the City of New York et al.*, (N. Y.), 98 N. E. 467, 41 L. R. A. N. S. 280.

Appellant refers us to the case of *Bolton v. McKelvey*, 247 Pa. 585, 93 A. 613, where the Supreme Court directed such writ to issue to secure a taxpayer's right to examine certain books statutorily open for inspection. In that case an individual applied for the writ. This decision seems not to be in accord with *Davidson v. Beaver Falls Council*, 348 Pa. 207, 34 A. 2d 505, and the cases cited therein, and may be explained by the fact that neither in the court below nor in the briefs on appeal was the

[3] In *Heffner et al. v. Commonwealth ex rel. Kline*, 28 Pa. 108, a mandamus was refused an individual petitioner to compel the defendants to open a public street, although the petitioner lived on this street. In *St. David's Church v. Sayen*, 244 Pa. 300, 90 A. 638, under similar circumstances such mandamus was awarded and the *Heffner* case was not referred to.

question raised as to the right of an individual to prosecute the writ in his own name.

Therefore, while the plaintiff had a statutory right of inspection, the breach of the public duty by the respondents did not result in the plaintiff suffering an injury special and peculiar to himself. The mere fact that the right of inspection was refused *him* is not such an injury. Otherwise, in every instance where a mandamus could issue on the relation of the attorney general or the district attorney, it could issue on behalf of an individual plaintiff where the respondents refused to the plaintiff the performance of the duty sought to be enforced. More than a mere refusal must appear to constitute special injury to the plaintiff, who must show that he, himself, suffered a special and peculiar injury by reason of the failure to perform the duty.

The judgment must be affirmed for an additional reason. No applicant for the 1946 examinations could require the exhibition of those questions to him immediately before the examination was had. The time of inspection would be unreasonable.[4] Here, appellant's demurrer admits [5] that the examination about to be given in November, 1946, would use similar questions to those used in 1944. Neither an applicant for examination nor the relator here can, *on the eve of said tests*, compel the respondents to show to him any part of the questions proposed to be used.

Judgment affirmed.

---

[4] Under §14 of the "City Charter" hereinbefore quoted, the right of inspection is "subject to reasonable regulations as to the time of examination. . . ."

[5] Petition averred "That the concealment of the 1944 examination questions will permit the re-use of some or all of the 1944 questions on the Hosemen Examination contemplated for November 1946, and thus give unfair advantage to those of the 1944 examinees . . . who are candidates in 1946."