Dorris, Appellant, *v.* Lloyd (No. 1).

Argued September 30, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*James Lenahan Brown,* with him *Joseph V. Kasper,* for appellant.

*R. Lawrence Coughlin,* County Solicitor, with him *Donald S. Mills,* Assistant County Solicitor, for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, November 24, 1953:

The court below correctly decided that plaintiff had no legal standing to institute these proceedings.

The action is one of mandamus. Plaintiff, Dr. John L. Dorris, filed a complaint in his capacity as County Chairman of the Democratic Party, but averred that he was proceeding also on behalf of the Democratic candidates who ran for office on the Democratic ticket

in 1952, State and National, and by and on behalf of the Democratic candidates who will aspire for office on the Democratic ticket in 1953, State and Local, and by and on behalf of the Democratic party of Luzerne County. The defendants are the County Commissioners of Luzerne County acting as the Registration Commission and as the Board of Elections of Luzerne County.

In substance the complaint avers that defendants have neglected and wilfully refused to perform the duties imposed upon them by law, more especially those provided in the Act of June 3, 1937, P.L. 1333, Art. III, Sec. 302 (g) as follows: "To instruct election officers in their duties, calling them together in meeting whenever deemed advisable, and to inspect systematically and thoroughly the conduct of primaries and elections in the several election districts of the county to the end that primaries and elections may be honestly, efficiently, and uniformly conducted." And (i): "To investigate election frauds, irregularities and violations of this act, and to report all suspicious circumstances to the district attorney."

The complaint detailed some alleged instances in which defendants did not perform these duties, and it prayed that they be commanded to abide by and comply with the laws of the State of Pennsylvania and to carry out the duties of inspection, investigation and report set forth in the portions of the act above quoted. Defendants moved to strike off the complaint, and the court, treating this motion as in the nature of preliminary objections, entered judgment in favor of the defendants, from which order plaintiff now appeals.

The Mandamus Act of June 8, 1893, P.L. 345, Section 3, provides that "The writ of mandamus may issue upon the application of any person beneficially

interested." Section 4 provides that "When the writ is sought to procure the enforcement of a public duty, the proceeding shall be prosecuted in the name of the Commonwealth on the relation of the Attorney General: *Provided however,* That said proceeding in proper cases shall be on the relation of the district attorney of the proper county: . . ."

Even before the passage of the act it had been uniformly held that when public rights are to be subserved only public officers may, ordinarily, apply for the writ, and that a private individual cannot do so unless he can show some particular right or privilege of his own independent of that held in common with the public at large: *Heffner v. The Commonwealth ex rel. Kline,* 28 Pa. 108; *Commonwealth ex rel. Snyder v. Mitchell,* 82 Pa. 343. Since the passage of the act there have been numerous authorities holding to the same effect, namely that, where the duty of an officer under a statute is a public one, it can be enforced only at the suit of the attorney general or the district attorney of the proper county or by a private citizen who has a specific and independent legal right or interest in himself different from that of the public at large or who has suffered an injury special and peculiar to himself: *Stegmaier v. Jones,* 203 Pa. 47, 52 A. 56; *Davidson v. Beaver Falls Council,* 348 Pa. 207, 34 A. 2d 505; *Kulp v. Board of Inspectors of Berks County Prison,* 102 Pa. Superior Ct. 310, 156 A. 547; *Butcher v. Philadelphia Civil Service Commission,* 163 Pa. Superior Ct. 343, 61 A. 2d 367. It is necessary too, in order to entitle a private citizen to enforce a public duty, that his interest or his injury be different not merely in degree but also in kind and nature from that of the general public: *Commonwealth ex rel. The Attorney General v. Mathues,* 210 Pa. 372, 376, 59 A. 961, 963.

It does not here appear that plaintiff as an individual or in his representative capacity had any grievance to be redressed or any right to assert that would not be common to the public at large in Luzerne County. The alleged failure of defendants to inspect systematically and thoroughly the conduct of primaries and elections and to investigate election frauds is something that affects the good government of the county and the welfare of all the citizenry. There is nothing to show that plaintiff is more peculiarly affected thereby than others or that he has suffered any injury different in kind from that of the general public.

There are other reasons why the complaint in these proceedings must fail. Mandamus lies only to compel the performance by a public officer of a ministerial duty and, while there undoubtedly are some duties imposed by law upon county boards of election that are purely ministerial, it is gravely doubtful whether the inspection of the conduct of primaries and elections and the investigation of election frauds do not involve the exercise of a broad range of discretion in the manner and extent of their performance. Moreover, a fatal objection to the granting of the relief here sought is the fact that, as stated in 55 C.J.S., 109, 110, §66: "The ordinary office of the writ of mandamus is to coerce the performance of single acts of specific and imperative duty, . . .; and ordinarily it is not an appropriate remedy to compel a general course of official conduct or a long series of continuous acts, to be performed under varying conditions, . . .". To this there is added in 34 Am. Jur. 864, §74: "It is plain that where the court is asked to require the defendant to adopt a course of official action, although it is a course required by statute and imposed upon the official by law, it would be necessary for the court to supervise, generally, his official conduct, and to

determine in numerous instances whether he has, to the extent of his power, carried out the mandate of the court. It would in effect render the court a supervising and managerial body as to the operation and conduct of the activity to which the writ pertains, and so keep the case open for an indefinite time to superintend the continuous performance of the duties by the respondent. Accordingly, the writ will not issue to compel the performance of a series of acts by a judicial officer; . . . nor to compel performance of other acts of a continuous nature." That mandamus will not lie to compel the pursuance of a general course of official conduct and the performance of continuous duties has been generally held: *Murphey v. Brock,* 206 Ga. 9, 55 S.E. 2d 564; *Diamond Match Co. v. Powers,* 51 Mich, 145, 16 N.W. 314; *State ex rel. Hawes v. Brewer, Sheriff,* 39 Wash. 65, 80 P. 1001; *People ex rel. Bartlett v. Dunne, Mayor,* 219 Ill. 346, 76 N.E. 570. It is obvious that to mandamus these defendants to perform the duties of their office which are set forth in the complaint would be to make the court a continuing supervisor of not only the good faith but also the ability with which they will hereafter perform the duties of their office, for it is to be noted that the complaint does not contemplate an order upon them to act with reference to some past event, but rather to behave themselves in the future. That, of course, is not the proper function of a mandamus.

The judgment is affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The strength of the American Republic, the durability of its freedom-dedicated institutions, the glory of its enlightened achievements and the assurance of its

ever-progressive, prosperous, happy future, stem mostly from the genius of its two party system of government. So long as the people have it within their hands, through the lever of suffrage over the fulcrum of popular sovereignty, to turn one party out of office and another in, the always present danger of usurpation of power, tyrannical oppression, or arrogant indifference to duty will never crystallize into reality.

The Republican and Democratic Parties in the United States are not simply vote-seeking organizations; they are official bodies born of the Constitution and the law of the land. The officials of each party obtain their positions through the same processes of popular selection which control the election of legislators, executives and judges. The plaintiff in this case, Dr. John L. Dorris, is the chairman of the Democratic Party of Luzerne County by virtue of the vote of Democratic electors. As county chairman of the Democratic Party he has serious responsibilities, one of which is to maintain an ever vigilant eye on the activities of the opposition party. The chairman of the Republican Party, of course, has the same responsibilities as against its opposition party.

I, therefore, do not agree with the majority Opinion that the plaintiff does not have a particular interest in the subject matter of this litigation apart from that generally entertained by the public. The duly elected chairman of a political party has not only an interest in the proper discharge of their public functions by government officials, but he has a duty to protest, in such manner as is open to him to protest, against any misconduct or assumed misconduct on the part of government officials. All that the plaintiff desires and asks for in this case is an opportunity to present his facts in Court. If his presentation does not make out a prima facie case, his complaint will be

dismissed. But I do not believe that it comports with our scheme of government to close the doors of the Court in his face on the assumption that his interest is simply private and not public.

In the case of *Sherman v. Yiddisher Kultur Farband*, 375 Pa. 108, 117, I expounded at length my views on the rights of American citizens to initiate legal proceedings in matters involving the security of the Nation. The same principle is applicable here insofar as it appertains to the welfare of a County.

Each morning the Court Crier of this Court opens the session by proclaiming: "All manner of men who stand bound by recognizance or *otherwise have to do before the honorable, the Justices of the Supreme Court of Pennsylvania, here holden this day may now appear and they shall be heard.*" (Emphasis supplied)

I would hear the plaintiff in these proceedings and order that he be heard in the court below.